IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| L'ORÉAL S.A. and L'ORÉAL USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON CONSUMER COMPANIES, INC. and NEUTROGENA CORPORATION, <br><br> Defendants. | C.A. No. 12-98-GMS |
| L'ORÉAL S.A. and L'ORÉAL USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MSD CONSUMER CARE, INC., <br><br> Defendant. | C.A. No. 12-99-GMS |

## ORDER CONSTRUING THE TERMS OF U.S. PATENT NO. 5,576,354

After having considered the submissions of the parties and hearing oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of U.S. Patent No. 5,576,354 ("the '354 patent"):[1]

1. The basic and novel property of the claimed invention is *stabilizing avobenzone with respect to ultraviolet radiation by adding a specified amount of octocrylene.*[2]

---

[1] Plaintiffs L'Oréal S.A. and L'Oréal USA, Inc. (collectively, "L'Oréal") assert patent infringement against defendants Johnson & Johnson Consumer Companies, Inc. and Neutrogena Corporation (collectively, "J&J") (C.A. No. 12-98-GMS) and MSD Consumer Care, Inc. ("MSD") (C.A. No. 12-99-GMS) (MSD and J&J, collectively, "the Defendants"). L'Oréal filed identical briefing for each case; for simplicity, references to L'Oréal's briefing and other shared items (like the court's previous claim construction order) will use the docket item numbering for the 12-98-GMS case.

---

[2] The asserted claims of the '354 Patent contain a "consisting essentially of" term. The Federal Circuit has explained:

> "Consisting essentially of" is a transition phrase commonly used to signal a partially open claim in a patent. Typically, "consisting essentially of" precedes a list of ingredients in a composition claim or a series of steps in a process claim. By using the term "consisting essentially of," the drafter signals that the invention necessarily includes the listed ingredients and is open to unlisted ingredients that *do not materially affect the basic and novel properties* of the invention. A "consisting essentially of" claim occupies a middle ground between closed claims that are written in a "consisting of" format and fully open claims that are drafted in a "comprising" format.

*PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354 (Fed. Cir. 1998) (emphasis added). Thus, the basic and novel properties of an invention determine whether unlisted elements fall within the scope of the claims. As with claim construction, the court determines the basic and novel properties of an invention as a matter of law, while resorting to the same sources of evidence as used for claim construction. *See Martek Bioscis. Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1373 (Fed. Cir. 2009); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1239–40 (Fed. Cir. 2003).

The parties dispute the basic and novel properties of the '354 Patent. L'Oréal argues that the basic and novel property of the invention is limited to "stabilizing avobenzone with respect to ultraviolet radiation by adding a specified amount of octocrylene." (D.I. 186.) J&J argues that the basic and novel properties of the invention must include "increasing skin protection against UV rays between 280 and 380 nm." (D.I. 189.) MSD offers a variation of J&J's proposal, arguing that the basic and novel properties include the "lasting skin protecting abilities of a sunscreen against the sun's UV rays between 280 and 380 nm, including the photostability of avobenzone provided by octocrylene in that sunscreen, and the sunscreen's water resistance." (12-99-GMS, D.I. 175.)

The court adopts L'Oréal's proposal. The claim language, the specification (to the extent it can be relied upon), and the prosecution history support excluding skin protection from the basic and novel properties of the '354 Patent. The asserted claims 26 and 27 recite processes "for stabilizing [avobenzone]" by adding specified amounts of octocrylene to a cosmetic screening compound containing avobenzone. As stated in the court's previous claim construction order, "preamble language merely '*describing the use* of an invention' or '*extolling benefits or features* of the claimed invention' does not function as a claim limitation. These are precisely the roles played by the preamble phrase at issue here . . . ." (12-98-GMS, D.I. 71 at 2 n.2 (emphasis added) (quoting *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002).) The preamble therefore offers a useful proxy for determining the basic and novel property of the invention. There is no explicit mention in the claims of stabilizing avobenzone for the protection of skin. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) ("[T]he name of the game is the claim." (quoting *In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998)); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ("It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." (internal quotation marks omitted)).

MSD blatantly mischaracterizes the court's previous claim construction order to argue that claim 26 and 27 are effectively composition claims. (12-99-GMS, D.I. 175 at 1 n.1.) Read in its full context, the order clearly described the '354 Patent's process claims as having "embedded" composition claims. (12-98-GMS, D.I. 71 at 6 n.9.) This does not change the undeniable fact that claim 26 and 27 are process claims "for stabilizing [avobenzone]." Moreover, the fact that the claimed processes require a "cosmetic screening composition" does not import skin protection as a basic and novel property of the invention.

Next, the court finds that the specification offers only limited utility in determining the basic and novel properties of the '354 Patent. The '354 Patent and the '150 Patent (U.S. Patent No. 5,587,150) are children of the same parent patent application and therefore share the same specification. The court must be careful not attribute properties of the '150 Patent—which specifically claims cosmetic screening compositions "*for protection of the human epidermis*"—to the '354 Patent. The court nonetheless finds support for limiting the basic and novel

2. A "material effect" on the basic and novel property of the claimed invention is *not limited to negative interferences or hindrances but rather can also encompass enhancements or improvements.* [3]

---

property of the '354 Patent to stabilizing avobenzone. *See* '354 Patent, col. 1: 47–63 ("The Applicant has discovered that, by combining [avobenzone] with [octocrylene] in well-defined proportions and in a well-defined mole ratio, an exceptional photochemical stability of the [avobenzone] was surprisingly obtained."). Importantly, the specification draws a distinction between the photochemical stability obtained vis-à-vis the process of combining octocrylene and avobenzone, and the skin protecting properties (sun protection factor and persistence) *"impart[ed] to the screening composition." Id.* col 1: 63–66 (emphasis added).

Finally, the court finds the prosecution history—particularly the Patent Examiner's restriction requirement, which resulted in the '354 Patent—also supports the L'Oréal's basic and novel property proposal. The restriction indicates that the Examiner considered the stabilization process a unique invention, separate and apart from skin protection. The court recognizes that the claims before the Examiner when he gave the restriction requirement were much broader than those that ultimately issued in the '354 Patent. Nonetheless, the restriction requirement confirms that stabilization of avobezone (a ketone) is a novel property distinct from the skin protectant properties such stabilization imparts to the cosmetic screening composition.

The Defendants rely almost entirely on the language of the specification, quoting the Federal Circuit's opinion in *AK Steel*, 344 F.3d at 1239–40 ("To determine [the basic and novel] properties, we need look no further than the patent specification.") Notwithstanding the fact that the specification here contains disclosures going beyond the '354 Patent alone, *AK Steel* does not minimize the role of other sources of evidence in determining the basic and novel properties of the invention. The court finds ample support for limiting the basic and novel properties of the '354 Patent to "stabilizing avobenzone with respect to ultraviolet radiation by adding a specified amount of octocrylene."

[3] Whereas ascertaining the basic and novel properties of an invention is a question of law, determining whether unnamed elements "materially affect" these properties is a question of fact. *PPG Indus.*, 156 F.3d at 1354–55. The court's role here, however, is to decide the legal meaning of "materially affect." L'Oréal argues that a material effect, for the '354 Patent specifically, is limited to negative effects. In other words, unnamed elements that materially *interfere* with the basic and novel properties are outside the scope of the claims, whereas unnamed elements that materially *improve* the properties are within the scope.

The court finds no support for this restricted view of "materially affect." L'Oréal is correct that the patentee may define "materiality" in the patent specification. *See Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1343 (Fed. Cir. 2009) (citing *PPG Indus.*, 156 F.3d at 1354–55). The court finds, however, that the '354 Patent did not do so. L'Oréal's reliance on the Federal Circuit's opinion in *Ecolab* is inapt. In fact, to the extent *Ecolab* touched on this question, the Federal Circuit ultimately found that the patent-in-suit did not "clearly limit[] the claim scope," and therefore there was no redefinition of the "consisting essentially of" term. *Id.* at 1344. Similarly, the court finds that the '354 Patent did not clearly indicate that material effects were limited to negative effects. The court will not adopt L'Oréal's restricted view. *See PPG Indus.*, 156 F.3d at 1355 ("PPG could have defined the scope of the phrase 'consisting essentially of' for purposes of its patent by *making clear* in its specification what it regarded as constituting a material change in the basic and novel characteristics of the invention." (emphasis added)). L'Oréal will be able to argue to the jury that positive effects caused by additional elements not listed in the claims are not, themselves, *material*. The court declines, however, to make such a ruling as a matter of law.

Dated: November 5, 2014

_____
UNITED STATES DISTRICT JUDGE